## MATTER OF BARRIOS

### In DEPORTATION Proceedings

### A–12376413

*Decided by Board January 22, 1963*

The favorable exercise of the discretionary authority contained in section 245 of the Immigration and Nationality Act, as amended, is accorded an alien from a nonquota country, previously denied an immigrant visa because he could not furnish an affidavit of support, who entered the United States as a nonimmigrant fully intending to comply with the terms of his admission, and who did not formulate a specific intention to become a permanent resident until after arrival when he saw an opportunity to work and study simultaneously.

CHARGE:

Order: Act of 1952—Section 241(a)(9) [8 U.S.C. 1251(a)(9)]—Failed to comply—nonimmigrant visitor for pleasure.

The respondent, a native and citizen of Bolivia, male, 22 years of age, unmarried, has been found deportable under section 241(a)(9) of the Immigration and Nationality Act (8 U.S.C. 1251(a)(9)) as a nonimmigrant visitor who failed to comply with the conditions of the status under which he was admitted. An order entered by the Board of Immigration Appeals on October 11, 1962 adjusted the respondent's immigration status under the provisions of section 245 of the Immigration and Nationality Act (8 U.S.C. 1255) and terminated the deportation proceedings. The case is now before this Board on motion of the Immigration and Naturalization Service for reconsideration of our decision and order of October 11, 1962.

The Immigration and Naturalization Service seeks the withdrawal of our order granting the respondent an adjustment of his immigration status on the ground that our action is not a sound exercise of the Attorney General's discretion. The Service maintains that to grant such relief to a nonquota alien who entered as a nonimmigrant with a preconceived plan to obtain permanent residence by adjusting his status after arrival would encourage deliberate evasion of consular functions. The Service also argues that an alien who "presents himself with tainted hands" does not merit the favorable exercise of a .

172

provision in the immigration laws (section 245) which "contemplates relief from hardship in cases presenting strong equities justifying a departure from the normal requirements of the law" (p. 5, Service motion).

Basically, the Service motion is premised upon the same conclusions reached by the special inquiry officer when he denied the respondent's application for an adjustment of his status. We rejected the special inquiry officer's conclusions on the theory that the facts of this particular case when considered in the light of the recent amendment of section 245 by the Act of July 14, 1960, permitted an interpretation more favorable to the respondent's application than that permitted by the statute prior to its amendment.

The Service argument would have us read into the amended statute the identical restrictions which were removed by the Congress. The Service adheres to the theory that an alien nonimmigrant who had a desire or purpose to enter the United States for permanent residence at sometime prior to securing a visa and entry as a nonimmigrant, is precluded from taking advantage of a statute specifically designed to enable him to attain his past desire or purpose without departure from the United States *if permitted to do so lawfully*. The courts have refused to adopt this theory. *Brownell* v. *Carija*, 254 F.2d 78, C.A.D.C., 1957; *Brownell* v. *Gutnayer*, 212 F.2d 462, C.A.D.C., 1954.

As stated above our decision to grant relief turns upon the facts of this particular case. The Service would have us base our action solely on the preliminary statement taken from the respondent on April 18, 1962 (Ex. 13). We do not agree with the Service that in the respondent's sworn statement ". ; . he unequivocally admitted that it was his intention to come here permanently at the time that he applied for and got his nonimmigrant visa" (p. 3 of Service motion).

The key questions and answers in the preliminary statement concerned with the respondent's intention to establish a permanent residence in the United States are as follows:

Q. Did you come to the United States with the intention to remain here permanently?

A. Yes, sir.

\* \* \* \* \* \* \*

Q. Then did you have as your intention in Switzerland in December 1961, that you would come to the United States as a visitor, then apply here for permanent residence?

A. Yes. (Ex. 13)

The first question makes no reference to the respondent's intention "at the time he applied for and got his nonimmigrant visa." The respondent's affirmative reply to the second question merely establishes that while in Switzerland in 1961 he decided to enter the United States

173

as a visitor and after such an entry he would apply for permanent residence *if permitted to do so lawfully*. This is precisely the same situation that was before the Courts of Appeal in the Carija and Gutnayer cases (*supra*).

The Service concedes that on this record the respondent is statutorily eligible for relief under section 245. They take the position that the respondent should not be rewarded for his subterfuge and evasion by granting him an adjustment of his status (p. 4, Service motion). The Service in support of their position cites two cases [1] which they allege "make it quite clear that a preconceived intent to seek permanent residence through adjustment of status after arrival, is a valid basis for nonexercise of discretion under section 245, even though the alien may be entitled to admission as a nonquota immigrant" (p. 5, Service motion).

The cited cases are not dispositive of the issue presented by the instant case. Both cases are concerned with aliens who entered as nonimmigrant crewmen. Relief under section 245 as amended is specifically barred to alien crewmen. Entry as a "bona fide nonimmigrant" was a statutory requirement of section 245 at the time the alien in the Trujillo-Gonzalez case applied for relief under section 245. The District Director denied relief on two grounds (1) statutory ineligibility and (2) the facts did not warrant the exercise of discretion. The court held that the District Director had reasonable grounds to believe that the alien was not a bona fide crewman and therefore statutorily ineligible for relief. The Service in the instant case concedes that the respondent is statutorily eligible.

The alien crewman in the Fassilis case,[1] *supra*, applied for relief under section 245 prior to its amendment on July 14, 1960. The District Director on June 2, 1960 denied relief on both statutory and discretionary grounds. The Regional Commissioner on August 23, 1960, subsequent to the amendment of section 245, affirmed the action taken by the District Director. The court found no irregularity in the denial of the alien's application on the ground that he was not a bona fide nonimmigrant crewman. The court, however, disposed of the case on the theory that the amendment of section 245 while the administrative proceeding was pending made mandatory the alien's statutory ineligibility for relief since he entered as a crewman.

Here we are confronted solely with a matter of discretion whereas the aliens in the cases referred to by the Service were both ineligible for relief in that they did not enter as *bona fide* nonimmigrants, a statutory element no longer present in section 245. The only evidence

---

[1] *U.S. ex rel. Trujillo-Gonzalez v. Esperdy*, 180 F. Supp. 909 (D.C. S.D.N.Y., 1960) ; *Fassilis v. Esperdy*, 192 F. Supp. 84 (D.C. S.D.N.Y., 1961).

we find germane to denying discretionary relief for the reason advanced by the Service, namely, "that it outrages all of the orderly processes of government to reward . . . subterfuge and evasion . . ." is the respondent's testimony that he did not inform the consul in Switzerland of his "intentions" at the time the nonimmigrant visa was issued (Ex. 13, R. p. 13). There is no showing in this record, however, that the respondent as a condition precedent to obtaining a nonimmigrant visa was required by the consul in Switzerland to state his ultimate "intention" after arrival in the United States.

We do not share the Service concern that to grant relief in this case "would encourage deliberate evasion of consular functions" (p. 5 of Service motion). We stated in our opinion of October 11, 1962, that section 245 is not the only provision of the immigration laws [2] which permits an alien in the United States to apply directly to the Attorney General for an adjustment of his immigration status. Consular functions are protected by the fact that the amended statute retains the safeguard that an alien's immigration status "may be adjusted by the Attorney General in his discretion and under such regulations as he may prescribe."

The facts of the instant case concerned with the exercise of discretion are simply not as heinous as the Service would have us believe. The Government has not made out a case which controverts the following testimony of the respondent with regard to his purpose in entering the United States as a nonimmigrant:

\*    \*    \*    \*    \*    \*    \*

A. The principal purpose of coming here was to visit some factories and to visit some relatives, but not at that time to change to a resident here.

Q. When did you decide that you wanted to become a resident of the United States?

A. When I saw the opportunity that I could work here and study here at the same time. When I entered this country I was not decided about changing status to become a resident. I wanted first to find out here about the circumstances and the opportunities (R. p. 13).

\*    \*    \*    \*    \*    \*

Q. Mr. Barrios, is there anything else that you wish to say on the evidence?

A. I didn't intend to violate your laws. If I did it was not with my intention (R. p. 18).

A composite of the evidence found in the preliminary statement (Ex. 13) and the record of hearing relevant to the issue of exercising the Attorney General's discretion establishes to our satisfaction that we have here an alien from a nonquota country who prior to entry had been unable to obtain an immigration visa for permanent residence

---

[2] Aliens who apply for the creation of a record of lawful entry under section 249 of the Immigration and Nationality Act do not make application directly to the consul.

because he could not furnish an affidavit of support. We also have a nonquota alien who entered the United States as a nonimmigrant fully cognizant of the fact that he could not remain permanently unless permitted to do so lawfully. This combination of factors does not spell out a case of circumventing the immigration laws by seeking an adjustment of status under the amended provisions of section 245 of the Immigration and Nationality Act. Discretionary relief is warranted on this record.

A case recently decided by this Board is typical of a class of cases in which relief should not be granted as a matter of discretion although the alien was statutorily eligible for an adjustment of status under section 245 (*supra*). The alien in *Matter of Sauer*, registered with his parents for an immigration visa under the Israeli quota in September of 1957. His parents secured visas and entered the United States for permanent residence in 1958 and 1959 respectively.

The alien Sauer in September of 1960 applied for and was denied a nonimmigrant visa by the Consul at Tel Aviv. He journeyed to Paris, France, and there falsely represented to the Consul that he had never applied for an immigration visa to enter the United States and that his parents were then residing in Israel. He secured a visitor's visa in August of 1961 and entered the United States as a non-immigrant.

Following this entry he married a resident alien. A third preference visa petition filed by his wife was approved on August 28, 1962. During the course of deportation proceedings he applied for an adjustment of status under the provisions of section 245. The Board of Immigration Appeals dismissed his appeal from an order of the special inquiry officer denying his application. The evidence established to our satisfaction that he did not enter the United States in good faith as a nonimmigrant and that he intended to circumvent the quota restrictions when he falsely represented his immigration status to the Consul at Paris. *Matter of Sauer*, A-12350247, BIA, January 1963, Int. Dec. No. 1265.

The motion will be denied.

ORDER: It is directed that the motion be and the same is hereby denied.